RENDERED: NOVEMBER 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0078-MR

EDIEL GIJON-CRUZ                                                       APPELLANT

v.
APPEAL FROM BOURBON CIRCUIT COURT
HONORABLE JEREMY MATTOX, JUDGE
ACTION NO. 10-CR-00050

COMMONWEALTH OF KENTUCKY                                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: DIXON, McNEILL, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: Ediel Gijon-Cruz, *pro se*, appeals from an order of the

Bourbon Circuit Court denying his motion to vacate, set aside, or correct sentence

pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42. Because each of

Cruz's claims are refuted by the record before us, we affirm.

On May 13, 2010, Cruz was indicted on two counts of complicity to

kidnapping (victim death) and two counts of complicity to murder. Cruz confessed

to his role in the planning and execution of the kidnappings to police officers but denied any role in the murders. The Commonwealth filed notice it would seek the death penalty against Cruz.

A year later, on May 12, 2011, Cruz entered into a plea agreement with the Commonwealth. In exchange for his testimony against a co-defendant, the Commonwealth agreed to dismiss the two counts of complicity to murder. Cruz agreed to twenty years' incarceration on each of the complicity to kidnapping charges, to be served concurrently.

Cruz's sentencing was delayed until April 12, 2012, as his co-defendant's case proceeded to trial. The trial court ultimately imposed sentencing pursuant to the terms of the plea agreement.

In August 2012, Cruz began filing a series of *pro se* letters and motions requesting the record of his case. On October 31, 2014, Cruz filed what was entitled "Motion to Withdraw a Coerced Guilty Plea." On December 4, 2014, Cruz filed a motion pursuant to RCr 11.42. He broadly asserted that he did not understand the charges against him at the time and that his attorney coerced him into not going to trial under fear of receiving the death penalty. The trial court held an evidentiary hearing on August 4, 2015. For reasons that are not clear from the record before us, the trial court did not immediately enter an order. Rather, the case languished until 2019, when Cruz sought relief from this Court in the form of

a writ of mandamus, demanding the trial court rule on the now five-year-old motion. The writ was granted by this Court, and the trial court entered what it entitled a "comprehensive order" denying relief to Cruz on December 2, 2019. On January 10, 2020, the trial court entered an "amended comprehensive order to correct typographical/autocorrect error." The order was substantively the same as the previous order and denied relief to Cruz. This appeal followed.

Cruz appeals only the denial of his motion pursuant to RCr 11.42. He makes three arguments on appeal. First, he contends he received ineffective assistance of counsel because counsel did not use a Spanish interpreter during any meetings with Cruz, including when discussing the terms and implications of the plea agreement. Second, he argues counsel failed to investigate and prepare his case. Finally, Cruz asserts counsel failed to discuss "collateral consequences" of entering a guilty plea pursuant to *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). We interpret this argument to mean counsel failed to inform Cruz, who is a Mexican citizen, that he would be deported after serving his sentence. Each of Cruz's claims are refuted by the record.

When a guilty plea has been entered and the movant collaterally attacks the judgment via a motion pursuant to RCr 11.42, it must be established

> (1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the

> plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.

*Bronk v. Commonwealth*, 58 S.W.3d 482, 486-87 (Ky. 2001). Further, "the trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea." *Id.* at 487.

Our analysis begins with the voluntariness of Cruz's plea. The voluntariness of the plea is determined from the "totality of the circumstances." *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10-11 (Ky. 2002). "Evaluating the totality of the circumstances surrounding the guilty plea is an inherently factual inquiry which requires consideration of the accused's demeanor, background and experience, and whether the record reveals that the plea was voluntarily made." *Fegan v. Commonwealth*, 566 S.W.3d 234, 237 (Ky.App. 2018) (internal quotation marks and citation omitted). Accordingly, we must "juxtapose the presumption of voluntariness inherent in a proper plea colloquy with a *Strickland v. Washington*[, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),] inquiry into the performance of counsel." *Bronk*, 58 S.W.3d at 486.

The trial court conducted a plea colloquy pursuant to *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Cruz was alert and engaged during the plea colloquy. A Spanish interpreter was used throughout the

entirety of the plea as Cruz's primary language is Spanish. First, defense counsel testified he had explained the nature of the charges to Cruz, the possible penalties, possible defenses, and the constitutional rights he would be waiving by entering a guilty plea. The trial court then turned to Cruz. Through the interpreter, Cruz testified he understood the nature of the charges against him, the range of penalties, and possible defenses. He also testified he understood he was giving up the right to a jury trial, the right to cross-examine the Commonwealth's witnesses and to call his own witnesses, the right to not incriminate himself, and the right to appeal. Cruz admitted he committed the crimes as read by the trial court; specifically that he "encouraged others and aided in planning and execution of the abduction of two people[.]" The following exchange also occurred:

> COURT: Has anyone threatened you, forced you, or coerced you in any way to pleading guilty here today?
>
> CRUZ: No.[1]
>
> COURT: Are you doing this of your own free will and because you believe it's in your best interest to do so?
>
> CRUZ: Yes.
>
> COURT: Do you have any difficulty – obviously you're here with an interpreter today – it's my understanding – do you speak English?
>
> CRUZ: A little. Some.

---

[1] Cruz's responses were in Spanish and translated to English by the interpreter.

COURT: But you do need the assistance of an interpreter, is that correct?

CRUZ: Yes.

COURT: And have you had the opportunity to have an interpreter with you or someone who can understand what your attorney is talking about when you talk to him about this case?

CRUZ: Yes.

DEFENSE COUNSEL: Sometimes we do, judge, and sometimes we do not. I know you're getting ready to go over the form. I went over the form with him in English and we had the interpreter come in afterward and he didn't have any additional questions.

COURT: Okay.

DEFENSE COUNSEL: I just want to make it clear for the record – he does – it is my belief that he does understand what's contained in the documents.

COURT: Mr. Cruz, I guess what I really want to know is, do you believe at any point during the course of this proceeding or these proceedings, that you didn't have an opportunity to understand what was going on because of not having someone interpret information for you?

CRUZ: Yes, I understood everything well.

COURT: Okay. Your speaking Spanish has not been a barrier to you understanding what's going on here today, is that correct?

CRUZ: Yes.

COURT: I'm going to show you this motion to enter a guilty plea. It's in English. Have you seen that document before?

CRUZ: Yes.

COURT: And did someone go over that document with you?

CRUZ: Yes, he did.

COURT: And did you have an opportunity to talk with your attorney with an interpreter or at least have an interpreter go over it with you as well, or have a chance to ask an interpreter questions as to any concerns . . . might be about this document?

CRUZ: No, I didn't have any questions.

COURT: You're satisfied that you understand everything in this document?

CRUZ: Yes.

COURT: Okay, on the back in the middle it looks like it has your signature. Is that your signature?

CRUZ: Yes.

COURT: Did anybody force you to sign that?

CRUZ: No.

. . . .

COURT: Are you completely satisfied with the services of your attorney in this case?

CRUZ: Yes.

COURT: Do you think [your attorney] has done everything he should to represent you in this matter?

CRUZ: Yes.

COURT: How do you plead then – I'll remind you that you're under oath – how do you plead to two counts of complicity to kidnapping where the victims resulted in death?

CRUZ: Guilty.

COURT: Are you pleading guilty because you're truly guilty and for no other reason?

CRUZ: Yes.

"Solemn declarations in open court carry a strong presumption of verity." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 569 (Ky. 2006). In addition to the testimony by Cruz during the plea colloquy, cross-examination by the Commonwealth at the evidentiary hearing on Cruz's RCr 11.42 motion revealed Cruz had met with the Commonwealth's Attorney and investigators regarding testimony against his co-defendant without the use of an interpreter. Accordingly, Cruz's first argument must fail.

Next, Cruz makes broad, conclusory statements that defense counsel failed to properly investigate the case prior to entry of his guilty plea. This is also refuted by the record before us, including the above-cited testimony given by Cruz regarding counsel's performance, preparation, and discussion of possible defenses. Now, Cruz attempts to argue counsel failed to, for example, request a competency

-8-

hearing which, he asserts "is common practice given the Commonwealth's intention to seek the death penalty as potential consequence." Cruz provides no basis in law or fact for this assertion. RCr 8.06 states:

> If upon arraignment or during the proceedings there are reasonable grounds to believe that the defendant lacks the capacity to appreciate the nature and consequences of the proceedings against him or her, or to participate rationally in his or her defense, all proceedings shall be postponed until the issue of incapacity is determined as provided by [Kentucky Revised Statute] 504.100.

At the evidentiary hearing, Cruz testified he spoke to defense counsel about the plea agreement. His testimony indicated he clearly understood the offer made by the Commonwealth and in fact instructed counsel to try to renegotiate a better deal. In other words, Cruz's testimony revealed he was an active participant in negotiating his defense. There is nothing in the record to suggest defense counsel should have sought a competency evaluation for Cruz.

Cruz also asserts that counsel's failure to investigate and prepare the case was ineffective assistance because Cruz "consistently maintained his innocence." This is again refuted by the record before us. Cruz confessed to his role in the kidnappings. Consistent with his confession, counsel was able to negotiate a plea agreement wherein the Commonwealth dropped both counts of complicity to murder and the death penalty was taken off the table as a possible

penalty.  There is also no indication that counsel was unprepared.[2]  Cruz's second argument must also fail.

Turning to Cruz's third argument, we note the Supreme Court of the United States has ruled that counsel must inform their client whether a guilty plea carries a risk of deportation.  *Padilla*, 559 U.S. at 374, 130 S.Ct. at 1486.  Cruz's claim that counsel failed to inform him of the consequence of deportation is also refuted by the record.  At the sentencing hearing on April 10, 2012, counsel informed the trial court that Cruz was aware he had to serve 85% of his sentence until immigration officials take him into custody.  Cruz was present with a Spanish interpreter.  He did not refute counsel's statement or ask for clarification.

Finally, we note the following exchange occurred on cross-examination at the evidentiary hearing:

> COMMONWEALTH:  What do you think happens if you win this?  What is your understanding?  Do you think you're gonna go free?  You've been told you're gonna go free?  Go back to Mexico?
>
> CRUZ:  All I'm asking for is a lower charge, that's all.

---

[2] Cruz states that counsel said, "I will wing it" and points to this as evidence that counsel was unprepared to try his case.  This comment was taken out of context.  It is unclear that counsel was even speaking about this defendant or this case as this comment was made as part of a conversation between counsel and the Commonwealth's Attorney at the bench while waiting for Cruz to enter.  While the audio quality is poor, the conversation appears to have pertained to a different defendant named Chad who had new charges.

-10-

We agree with the trial court that Cruz's guilty plea was knowingly, voluntarily, and intelligently entered. He had multiple opportunities to alert the trial court if he did not understand the proceedings due to a language barrier, or any other reason, and did not. In fact, he testified he fully understood the proceedings. His testimony at the evidentiary hearing on the RCr 11.42 motion that he was simply "asking for [] a lower charge, that's all" indicates Cruz regrets making the plea agreement. Although Cruz is not appealing his motion to withdraw his guilty plea, we nevertheless point out that hindsight or a change of heart is not grounds for withdrawal of a guilty plea. *See Commonwealth v. Pridham*, 394 S.W.3d 867, 885 (Ky. 2012). Nor is it proper grounds to collaterally attack the judgment pursuant to RCr 11.42. Moreover, Cruz's regret after the fact is unrelated to counsel's assistance in negotiating and entering the guilty plea. We cannot say counsel made errors so serious his performance fell outside the wide range of professionally competent assistance. Nor can we say Cruz was prejudiced in any way by counsel's performance. *Bronk*, 58 S.W.3d at 486-87.

For the foregoing reasons, the order of the Bourbon Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Ediel Gijon-Cruz, *pro se*
Sandy Hook, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher C. Bailey
Assistant Attorney General
Frankfort, Kentucky