RENDERED: AUGUST 18, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0968-MR

JOEY L. CARTER                                                          APPELLANT


v.
APPEAL FROM BRECKINRIDGE CIRCUIT COURT
HONORABLE KENNETH H. GOFF, II, JUDGE
ACTION NO. 19-CR-00064


COMMONWEALTH OF KENTUCKY                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Joey Carter appeals from the Breckenridge Circuit Court's

denial of his motion to withdraw his guilty plea pursuant to Kentucky Rule of

Criminal Procedure (RCr) 8.10. We affirm.

On the night of March 28, 2019, Carter was driving his Ford Explorer

under the influence of methamphetamine when he abruptly decided to turn around

on Kentucky Highway 259 in Breckenridge County. In doing so, Carter struck an

oncoming vehicle, injuring two adults and killing a minor child who was a

passenger in the rear seat.  Carter was taken to the hospital and consented to a blood test.  He also admitted to being under the influence of marijuana and methamphetamine, which was later confirmed by the blood test.  Upon leaving the hospital, law enforcement returned Carter to the scene of the accident where he failed field sobriety tests and was placed under arrest.  On May 9, 2019, Carter was indicted for one count of murder, two counts of assault in the second degree, and operating a motor vehicle under the influence of drugs or alcohol with aggravating circumstances.

Carter's trial date was continued numerous times for various reasons that are not germane to this appeal.  On February 23, 2022, the trial court conducted what it characterized as an emergency hearing.  At that point, the trial was scheduled in two weeks and the court was attempting to address a breakdown in communication between Carter and his lead attorney.[1]  The Commonwealth argued Carter was not participating in his own defense and objected to any continuation of the trial for that reason.  The court then conducted an *ex parte* hearing with only Carter and defense counsel.  Carter stated he felt like he was not "being represented to the fullest" and believed his attorney was "prejudiced" because she had a child the same age as the child killed in the motor vehicle

---

[1] Carter's first attorney, from the Department of Public Advocacy in Elizabethtown, was replaced by two attorneys from the same office in June 2021.

accident. Defense counsel pointed out the Commonwealth had made an offer that expired in one week and the parties had not engaged in court-ordered mediation because the Commonwealth was adamant it would not budge from the offer. Counsel also explained that Carter did not want to have hard conversations about the merits of the Commonwealth's case and what a jury would potentially do at trial. She also stated the bulk of Carter's defense would be his testimony and he refused to participate in preparation for trial. Ultimately, the trial court informed the parties it would not permit defense counsel to withdraw until after expiration of the Commonwealth's offer, but it did cancel the upcoming trial. The Commonwealth warned there would be no more offers and it would seek the maximum penalty of life imprisonment from a jury. Carter indicated he understood.

On March 2, 2022, the parties were again before the trial court. Carter filed a motion to enter a guilty plea, and his plea was taken that day. Pursuant to the Commonwealth's offer, the charge of murder was reduced to first-degree manslaughter and Carter was to receive combined sentences amounting to thirteen years' incarceration. The trial court conducted a plea colloquy pursuant to *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and sentencing was scheduled for April 20, 2022.

When Carter appeared before the trial court for sentencing, he indicated he wished to withdraw his guilty plea. He provided the following rationale:

> I wasn't fully represented by counsel and during the time I pled guilty I was in the process of switching over medication and was very emotional. Due to that, I was given only five days after I received the [offer]. I'm not guilty of the charges that I'm charged with and I would like to retain my rights to trial.

Defense counsel pointed out that Carter had gone over the Commonwealth's offer with three separate attorneys and the offer had been pending longer than five days. The trial court appointed conflict counsel and sentencing was continued several more times to allow conflict counsel to consult with Carter about retracting his guilty plea.

Carter next appeared before the trial court on June 22, 2022, again expressing his desire to withdraw his guilty plea. When asked why on direct examination by conflict counsel, Carter responded, "I feel like I was rushed into things and like I made the wrong choice." The trial court refused to allow Carter to withdraw his plea, stating he had not provided a sufficient legal reason to set aside the guilty plea. Carter was then sentenced according to the terms of the plea agreement. This appeal followed.

"A trial court may accept a guilty plea upon a determination, made on [] the record, that the plea is voluntarily and intelligently made, with sufficient

awareness of the relevant circumstances and likely consequences." *Porter v. Commonwealth*, 394 S.W.3d 382, 385 (Ky. 2011) (internal quotation marks and citations omitted). In determining whether a guilty plea is voluntarily and intelligently made, the trial court considers the totality of the circumstances surrounding the guilty plea. *Id.* Under RCr 8.10, a defendant who has pleaded guilty may withdraw the plea under certain conditions. "If the plea was involuntary, the motion to withdraw it must be granted. However, if it was voluntary, the trial court may, within its discretion, either grant or deny the motion." *Rigdon v. Commonwealth*, 144 S.W.3d 283, 288 (Ky. App. 2004) (citations omitted). "After finding that [a defendant's] plea was voluntary (which is reviewed for clear error), a trial court's denial of a defendant's motion to withdraw a guilty plea is reviewed for abuse of discretion." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 570 (Ky. 2006) (citations omitted).

On appeal, Carter focuses on four reasons that he argues indicate his guilty plea was involuntary. To wit: (1) he was "forced" into pleading guilty; (2) he "didn't know what was to come of it"; (3) he did not understand what was going on at the time; and (4) he was in-between medications at the time of the plea. Further, Carter asserts the trial court's lack of analysis into the voluntariness of his plea is clear error. We disagree because Carter's claims are refuted by the record before us, including statements made under oath during his plea colloquy. Sworn

declarations by a defendant in open court that his guilty plea is made voluntarily are not conclusive, but they do "'carry a strong presumption of verity.'" *Johnson v. Commonwealth*, 412 S.W.3d 157, 168 (Ky. 2013) (quoting *Edmonds*, 189 S.W.3d at 569).

Accordingly, we first look to Carter's sworn declarations during his plea. Carter affirmed that defense counsel had explained the charges against him, the penalties, the possible defenses, and likelihood of success at trial to his "complete satisfaction" and "complete understanding." He testified he was pleading guilty because it was in his best interest to do so and because he was guilty and for no other reason. He further testified he read and understood the motion to enter a guilty plea and signed it of his own free will and that he had not been threatened, forced, or coerced into entering the plea. The trial court also addressed the impasse between Carter and his counsel the week prior to entry of the plea. The following exchange occurred:

> COURT: Sir, in light of the hearing we had last week and the discussions we had, are you comfortable completing this, or entering this plea today?
>
> CARTER: Yes, your honor.
>
> COURT: Are you comfortable with the representation of your attorney?
>
> CARTER: One hundred percent. Yes.

>  COURT:  So whatever impasse you all had last week,
>  you reached an agreement and you're willing to proceed
>  with this matter?
>
>  CARTER:  Yes, your honor.
>
>  . . . .
>
>  COURT:  Okay.  The record needs to reflect that this
>  court has examined [Carter] and finds that his offer on
>  plea of guilty is knowingly, voluntarily, and intelligently
>  made.  It is made after him having the benefit of [defense
>  counsel], who this court knows to be competent, and who
>  this court believes has taken the Commonwealth's offer
>  and gone over it with [Carter], explained it to him, and
>  answered any of [Carter's] questions.  Based upon those
>  understandings, [Carter], this court is going to accept
>  your plea of guilty.

The trial court also went through each of the constitutional rights Carter was giving up by entering a plea (*i.e.*, the right to a trial by jury; to confront and cross-examine witnesses; the right against self-incrimination; and the right to appeal his conviction) and Carter confirmed his understanding of each.  Finally, Carter stated to the trial court in an allocution, "On March 28, 2019, I was under the influence of meth[amphetamine].  Had poor judgment, made a bad decision and it cost the life of a seven-year-old little girl.  After the accident I tried to help every way I could.  I'm an addict."  Carter then testified he understood he would have to serve at least eighty-five percent (85%) of his sentence before parole eligibility.

"Evaluating the totality of the circumstances surrounding the guilty plea is an inherently factual inquiry which requires consideration of the accused's demeanor, background and experience, and whether the record reveals that the plea was voluntarily made." *Fegan v. Commonwealth*, 566 S.W.3d 234, 237 (Ky. App. 2018) (internal quotation marks and citation omitted). Carter was alert, engaged, and fully participated in his plea. He indicated a full understanding of the plea agreement and testified numerous times that he was pleading guilty because he was guilty and for no other reason. Although he now argues about being "between medications" at the time of the plea, he does not elaborate on any physical or mental illness diagnoses, nor does he state specific physical or mental effects he suffered at the time of the plea. In fact, the following exchange occurred during the plea colloquy:

> COURT: Are you under the influence of any intoxicating substances or mind-altering drugs?
>
> CARTER: No, your honor.
>
> COURT: Have you ever been confined to a mental hospital or been treated for a mental disease?
>
> CARTER: No, your honor.
>
> COURT: The court will find [Carter] is competent to enter a plea of guilty today.

Carter also failed to provide any evidence about illnesses and/or medications at the hearing to withdraw his plea. When asked by conflict counsel

on direct examination if he felt like he entered the guilty plea as a result of mental illness or being under the influence of "something" at the time, Carter failed to directly answer the question. Instead, he responded that he felt like he was "forced into it." When asked who forced him into it, Carter responded, "More or less my attorney and I was scared by the prosecutor . . . . I was told if I didn't take the deal he was gonna shoot for life and after I thought about it, I want to go to trial." Accordingly, Carter's argument about being "between medications" is not supported by the record. Carter had an opportunity to present evidence to that end and failed to do so. Similarly, we do not believe the Commonwealth's assertion that it would seek a life sentence at trial was threatening or coercive. A life sentence was within the range of possible penalties available at trial, and Carter testified he was informed of said penalties by his attorney.

Although Carter is correct that the trial court did not enter a separate order denying his motion to withdraw his guilty plea and making findings pursuant to its ruling, his argument is nevertheless without merit. The Commonwealth points out that this Court has previously addressed Carter's argument:

> We note that in its order denying [Defendant's] motion to withdraw his guilty plea, the circuit court did not make the required finding that [Defendant's] guilty plea was made voluntarily under the totality of the circumstances. However, the failure of a trial court to make a finding of fact on an issue essential to the judgment shall not be grounds for reversal or remand unless it is brought to the attention of the court by a

written request for the finding no later than ten days after entry of judgment.

*Rigdon*, 144 S.W.3d at 289-90 (footnote omitted).[2]

Carter failed to request separate written findings from the trial court. However, the required findings are nevertheless in the record before us. Following entry of Carter's plea on March 2, 2022, the trial court entered an "Order on Plea of Guilty" which found Carter's plea was knowingly, intelligently, and voluntarily entered. Then, the trial court entered a "Judgement and Sentence on Plea of Guilty" on June 23, 2022, followed by an "Amended Judgment and Sentence of Plea of Guilty" on July 11, 2022. Both contain the following:

> Finding that the Defendant understands the nature of the charge against him including the possible penalties, that the Defendant knowingly and voluntarily waives his right to plead innocent, to be tried by a jury, to compel the attendance of witnesses in his behalf and to confront and cross examine witnesses, and finding further that the Defendant understands and voluntarily waives his right to not incriminate himself, and finding further that the Defendant waives his right to appeal his case to a higher court, and finding that the plea was voluntary, the Court accepted the plea.

That the trial court did not reiterate its findings in a separate order denying Carter's motion to withdraw his guilty plea was not an abuse of discretion.

---

[2] *See also* Kentucky Rule of Civil Procedure (CR) 52.04, which states, "[a] final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02."

Lastly, we point out that, in arguing his motion to withdraw his plea to the trial court, Carter indicated that, in hindsight, he "felt like he made the wrong choice." He also stated that, after thinking about it *after* entry of his plea, he simply decided he wanted to go to trial. "Like [Carter], many other defendants, after entering valid guilty pleas, find that some consequence of the bargain gives them second thoughts. Mere second thoughts, however, do not entitle one to relief from one's guilty plea." *Commonwealth v. Pridham*, 394 S.W.3d 867, 885 (Ky. 2012). Moreover, "[a] change of heart – even a 'good faith change of heart' – is not a fair and just reason that entitles [one] to withdraw his plea." *Id.*

In conclusion, there is substantial evidence in the record to support the trial court's finding that Carter's plea was voluntarily and intelligently made. Further, denial of his motion to withdraw the plea was not an abuse of discretion. Accordingly, the Breckinridge Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Travis Bewley
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christina L. Romano
Assistant Attorney General
Frankfort, Kentucky